Your case is Clacks v. Kwik Trip, Appeal No. 23-1983. Mr. Hanson Good morning, and may it please the Court, I'm Attorney Kyle Hanson of the Hanson Law Group for the Plaintiff and Appellant, Stanford Clacks. This case is about some truly torturous conduct by Kwik Trip employees, followed by the employer refusing to allow that victim employee, Stanford Clacks, to return to work, and later his resulting termination of employment. The trial court dismissed Clacks' complaint because in its view, his deposition testimony foreclosed his claims. His later declaration was directly contradictory on the critical point. His later declaration was a sham affidavit. So the key legal issue in this case is Clacks' later declaration of sham. You agree that if the judge did not abuse his discretion in striking the affidavit, then Mr. Clacks cannot establish a hostile work environment, right? Yes. And the key to that is abuse of discretion as combined with the overall standard of review on motions for summary judgment, that the court cannot make credibility determinations and that the court must take every reasonable interpretation in favor of the non-movement and that the standard of review is de novo. Mr. Clacks' declaration is not a sham. In trying to show that it is, Kwik Trip would have to pair up some precise statements made at the deposition side by side with the declaration testimony to show them to be directly contradictory. But when Kwik Trip attempted to do so, many times it didn't quote Mr. Clacks at all. It failed to give the precise citations and in many places made false assertions of what the record actually shows. And I'd like to start with that last point. On the response brief at page 12, there is an assertion that Mr. Clacks was with his first trainer, quote, for approximately three weeks. Gives a precise citation there, deposition, page 43, one through six. But Clacks actually said, quote, I believe two to three weeks. Why does that matter? It matters because Kwik Trip goes on to calculate precisely exactly 21 days after the recalled start date and say that this is in direct contradiction to sworn deposition testimony and necessarily impossible because according to Clacks' declaration as to when he was reporting about Tom Rourke Hall, he had not yet started with him. Now this matters here. You can't, digging into it, so Clacks recalled that he started June 25th of 2018. That was a Thursday. Clacks recalled that he was with his first trainer, that's Dan Davis, for approximately two or three weeks. And the first partial week starting on a Thursday is June 25th, 26th, 27th. The next week starting on Sunday is June 28th, 29th, 30th. Last four days of the week, July 1, 2, 3, 4. The start of the third week then would be on July 5th. His declaration was that he started with Tom Rourke Hall on July 5th and immediately was suffering this vitriol. And the direct contradiction asserted, the one that no reasonable person could come to another conclusion, that the declaration has to be a sham, was that I believe two or three That partial week, June 25th, 26th, 27th, you have the first partial week and the next full week, the starting with Tom Rourke Hall was on the first day of that third week thereafter. So let's say, except Clacks had a memory lapse. Okay, maybe he did, maybe he didn't. But to drill down on the point at the deposition, the question was asked, what did Quick Trip know? What did you tell them about this trainer? And his response to that question was, he's a bad trainer. And that's a good point because in these, after shooting down the issue of the dates, because the dates are consistent, the focus of the deposition was definitely on what actually happened, was the work environment hostile, and what did you report to the trainer? In the deposition transcript, which I made sure to have here in full, the parts that I'm going to reference here, we have the clear combination. You have pages 54 to 62. What happened and then did you ever reach out to human resources about it? And it was about the substance. The deposition questioner obviously asking about what was the substance of what was discussed and did you ever reach out to human resources? There wasn't the question of exactly when, exactly how many times. Again, we've accepted that the dates were correct. Mr. Clacks was correct with the dates. The substance of what was asked, though, what did you tell human resources? Because where we're going is for employer liability, right? And so where did he disclose that this trainer called me the N-word numerous times, called me a monkey on numerous occasions, where was that during the deposition when asked? What was said, where was that disclosed? You hit it on the head, Your Honor. When asked. The nature of depositions, we as attorneys ask deponents questions and their obligation is to answer them. Mr. Hanson, don't you lose this hostile environment claim just by the nature of your concession? When you concede that you can't prevail without the declaration, the declaration then is inconsistent or contradictory to the deposition. It's not, Your Honor. I'm saying by the nature of your concession, you lose. That's the problem. I'm sorry. Maybe I missed something and I misspoke when I was... No, I think you're right. I mean, you can't win on the hostile work environment claim without the declaration. The summary judgment, Mr. Clack's testimony doesn't get you there. It doesn't get you to hostile work environment because he never testifies in the deposition that he told these trainers about this horrible, I mean, absolutely horrible things that he was subjected to. But again, we're talking about employer liability. He doesn't tell his employer, I was subjected to this treatment in his deposition. He only does it in the declaration and we've held on numerous occasions and recently, by the way, that even affidavits that aren't directly contradictory can be excluded under the rule. And then you have a further problem that the standard of review is abuse of discretion. So nobody, nobody can agree with the district court in order for us to find that the district judge abused its discretion in striking the affidavit and the affidavit was at least inconsistent in some material respects because it, without it, you don't have a claim. Are you following me? Yes. But there's two problems with that. The first is when we're talking about the reports and what was discussed, Mr. Clack's answered at his deposition as to generally, okay, generally you said this, a deponent's position at a deposition isn't to, and then there's more that I might need to later use. But the question was specifically asked, when you reach out to human resources, did you ever reach out to human resources and let them know what was going on? I reached out, I called Sean, Sean, I'm not going to make it, I can't keep doing this, I'm not going to make it. Did you tell Mr. Sean, Mr. Rockwell, that he was a bad trainer or, and he cuts, Mr. Clack's cuts off the question and says, I would say horrible. I would say this dude hates me. You know what I'm saying? The feeling is mutual. And then the next question was, did you give specifics? So on page 61, it starts with Clack's quoting, this is going to be my last route. Question was this. But the question was asked. That's the point. I understand. He asked, did you give specifics? And his response, Mr. Clack's response, we can't add to the transcript and we can't colorfully pull out the parts. I'm asking, when he was asked that question, how did he respond? I understand that we can't add to the transcript, but we can start reading a little bit earlier to see what they were talking about. But the point was this question wasn't asked. And I'm looking at the transcript and the question was asked. About what is the issue? So looking higher on page 61, Clack's said, that's what I told him. This is going to be the last route. Question, was this one of the last couple of days you worked together? Yes. So it sounds like when you talked to Sean, you basically said, get somebody else. This guy is awful. No, I think, Mr. Hanson, I think you're misinterpreting Judge Pryor. What she's asking is the question, did you give Sean specifics about things Oracle was saying and doing, or did you just say, this guy is awful, I need somebody else? Answer, at the time it was more he was awful, I need somebody else at the time, than beyond what you're reading. So it sounds like when you talked to Sean, you just basically said, get me somebody else, this guy is awful. Answer, correct. What more, I mean, what should they have asked? I mean, holy cow, they only have, what, eight hours? In fact, it's been a while since I've taken a deposition. But I think it's only eight hours, right? If the context of this question is, when you told them this was going to be the last drought, in that conversation, were there other specifics mentioned? I've heard it in many times, when you have a question like this, were there any other times you discussed? That was a question that was not asked. Was there any other times that you talked about Tom or Brett Nekash? Those were things that weren't discussed. That was the very next question. Did you tell Sean any of the specifics or details, other than this guy is terrible? They were just talking about this. What was this? What was the this you were talking about? The question on this point comes down to, was Mr. Klax allowed to believe that the questioning was about the one conversation they were just talking about? Or did he have to infer that they could be talking about any conversation on the general topic at all? So, counsel, when your client, sorry. No, no, no. I was just going to say he's in his rebuttal time. Go ahead. You're fine. Okay. Thank you. On the topic of- Mr. Hanson, you're well into your rebuttal time. Yes. I want to make sure that I touch on the point. In addition to the hostile work environment claim, we have the issue of retaliation. And on the retaliation point, the very last, the last aspects of the- What is the adverse employment action? The adverse employment action is, are two things. That's exactly my point. I'm here to help. One, the district employees were allowed to come back and were told to come back by July 31st. And he wasn't allowed to because he, as the victim, was told not to come back because his complaint was still pending. Now you can have a, for example, a cop that's on, that's under investigation, that needs to, that's on leave, that's a perpetrator. The victim was excluded. That's a problem. That's an adverse reaction. The problem is he wouldn't return to work. And you can see that in your brief. You say, Quick Trip contacted him to discuss whether he would return to work. That was, that was the issue. Are you going to return to work? No. It's not an adverse employment action. That's not what he said. I know, but that's what you said in your brief. He goes back and forth. I'm reading from your brief. Quick Trip contacted him to discuss whether he would return to work. Where are you? I'm sorry. I'm in the blue brief, on page 21. Okay. I realize that I'm very close to... Well, you know, if you want to save the rest of your time and just look at that while, you know, then address it in rebuttal, that might be more efficient. All right. My final point here is that on the deposition pages 144 and following, we have, we have time and again, Quick Trip suggesting things that Mr. Klax said no to. Didn't you know that the three were terminated? Didn't she tell you that? No. Did you, didn't you tell her you couldn't come back to work as a driver because you didn't feel safe? No. All of that is different from what the trial court concluded, and that's why, at a minimum, the, Mr. Klax's last claim is not barred and should be reversed. Thank you. Thank you, Mr. Hanson. Okay, Ms. Kalk. Good morning, Your Honors. I know you've clearly all read the transcript, so I'm not going to go back into the facts on this one. Let me start out by saying initially that this is one we believe, obviously, that the district court got it right. We looked at the deposition transcript. We made the argument about a sham waiver in response to the original brief when we saw the declaration for the very first time. One of the things that the plaintiff's counsel never did was raise that issue with the district court, so our view initially is that he's waived that argument. He could have easily asked the district court judge. It's not waived. I would go on beyond that. I'll move on. Putting that aside, we don't believe that there's anything there that would require you to say there was an abuse of discretion by the district court. They looked at the transcript. That's a better argument. We don't believe there was an abuse of discretion is what I'm saying. We believe that the facts were there for the court to make the decisions that it did. As to the declaration, they did not exclude, the district court didn't exclude all of the declaration. And so that's the question. The part that he hinged on for quite a bit of time is that how many times did he complain about Tom, the second trainer? Was that question ever asked? Tom, I didn't ask specifically how many times did you complain? What I asked about was did you complain and what did you say? All right. And when he stopped with he was awful and I asked him again then, did you give more detail? He said no. I again asked at the very end of the deposition, is there anything else? I think I asked him, is there anything else you need to tell me about four different times? A couple times he went into different things that didn't pertain to race. But I gave him a lot of opportunities to say, yes, I told him this and that. I did not say exactly how many times did you complain. I was concerned about the substance of the complaint. What are the portions of the affidavit? So if we find that that was a mistake regarding the dates, if we accept the judge got the dates wrong because the question was never asked of Mr. Klax, how many times did you complain about Tom? As you articulated that, the judge didn't wipe out the entire declaration. He said portions of it. So if we take how many times portion off and he kept the rest of the affidavit in play except for the nature of the complaint that you made about Tom and also how many times and what you said about Brent. Going with Tom first. Yes. The big issue is you can't leave in the part about the nature of the complaints. And the timing kind of goes with that. Initially, I take issue with the dates. When he talks about even if we only said two weeks, that would still put the two weeks when he started working with Tom after he claims to have made these complaints. So there is a discrepancy there, even if you say two weeks versus three. But putting that aside, he clearly testified about the substance of what he told him. He may not have said the dates because at his deposition, if you read through it, you'll see dates were difficult to pull out in the time that I had. And so we didn't get too focused on dates because he couldn't remember that. But what he did contradict completely in his declaration is what he said. He was very clear in his deposition as to Tom. All he said was this guy is a bad trainer. And he only worked with him for five to eight days. So it's hard to imagine that five to eight days he made all these complaints. But putting that aside, what he testified to was I said he was awful, and he never said anything else, and he was given that opportunity. So I think the when isn't the problem. The problem is he's contradicting what he said about the substance. When we move on to Brett, what he told me, and I asked this question a couple different ways, was he did say he gave some details, which is not what the company understood, but we accept for purposes of summary judgment. But he also said that he made those complaints and only worked with him one more day. I asked very specifically, once you complained, was that the end? You worked with him one more time? He was given an opportunity to respond to that, and so we know when that came in, and these were pretty egregious activities, he worked with him for one more day, and that was the end of it. And so at that point, the first time there was a, I will say, thorough investigation was when HR was put on notice. And I just want to make sure that everyone understands the minute the company was aware, they fired everybody, even though it had been a couple of years. In the meantime, they didn't play any games. They got rid of these people as soon as they were actually aware. And so I guess moving kind of the timeline forward, when he begins to work, he's no longer a trainer. Now he's a driver. There is some conversation when he makes the complaint, kind of where we left the questioning just a moment ago, when he's not permitted to come back to work after the COVID restrictions. And was that the reasoning provided by Quick Trip? No. What happened there was, generally speaking, there was pandemic leave. I think we all painfully well remember COVID. They were allowing employees that had need to be on leave to be on leave. Mr. Klax asked to take pandemic leave because he had a son with some significant health issues and was very concerned about the implications on his son with COVID. They extended that leave to July 31 for all the co-workers that needed it, frankly. And so that was kind of a general return to work date from COVID, if you can and if you feel comfortable. There was conversations with Mr. Klax, and he was still on leave because the investigation was ongoing. Are you comfortable coming back? You can see in the transcript where he says many, many times he does not feel safe. I do not feel safe returning. I do not feel safe. So it's not that they didn't return him because of his complaint, and this is, as I know you know, a but-for analysis. They didn't return him because he was saying, I do not feel safe. Even though they had fired the three bad actors, he says in his transcript, I didn't feel safe. They might kill me. And so how can we bring somebody back to work who keeps saying over and over and over again, I don't feel safe to return? Are there any other questions? Otherwise, I don't want to beat the horse dead. No, thank you. All right, thank you. Okay, Mr. Hanson, rebuttal. Thank you. George Floyd was murdered May of 2020. Very strong connection to the circumstances going into June and July of 2020. The comments about Mr. Klax knowing about the three being fired, he didn't know. Deposition page 144. Did Ashley reach out to you to tell you about that? No. Shame after David comes down to, I understand we have these different cases. But Castro. I don't want to misrepresent the record. Where we left the question with Judge Kirsch was the suggestion that Quick Trip did not permit him to come back because he had made complaints of a racially hostile work environment. And so, was it Quick Trip not permitting him to come back because of his complaints? Or as you just alluded to, because of the racial unrest in the country? I'm just trying to connect up where you wanted us to go with that argument. All of the other Quick Trip employees were told that they could come back as of July 31st. And Mr. Klax was not allowed to do that. Was told not to do that. The apparent reasoning was he must not have done that because he didn't feel safe. But that's not what Mr. Klax said. Beginning on page 144 of the transcript. That wasn't his testimony. He didn't understand that the three people were terminated. But when asked time and time again, didn't you tell her that you couldn't come back to work as a driver because you didn't feel safe? The answer was no. And again and again on that point. Can I make my final statement or not? Yes. Thank you, Your Honor. In the case law, we have lots of different ways of looking at the sham affidavit rule, as the Court noted. And I think the clearest here is Castro. We have the trial court found a sham and this court properly reversed. The principle must be applied with great care because summary judgment is not a tool for deciding questions of credibility. It goes on, that's why we have said an affidavit can be excluded as a sham only where the witness has given, quote, clear answers to unambiguous questions which negate the existence of any genuine issue of material fact. There weren't unambiguous questions about when Mr. Clax was talking about the reports. Thank you, Mr. Hanson. The case will be taken under advisement.